IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| WEATHERLY GRAHAM *et al.*, | * |
|     Plaintiffs, | * |
| v. | * |
| |    Civil No. 23-1777-BAH |
| STATE OF MARYLAND *et al.*, | * |
|     Defendants. | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OPINION**

Plaintiffs Weatherly Graham and Justin Lane ("Plaintiffs") bring this case seeking recovery for the loss of their dog, "Boy," who was allegedly shot on Plaintiffs' property by Baltimore City Sherriff's Deputies. ECF 14 (amended complaint), at 2. Plaintiffs sue Deputy S. Washington, Deputy A. Hawley, and the State of Maryland (collectively, "Defendants"), alleging a series of violations of common law torts, the Maryland Declaration of Rights, and the United States Constitution. *See generally id*. at 9–20 (detailing Counts I–IX). Now pending before the Court is a partial motion to dismiss filed by all Defendants. *See* ECF 17. Plaintiffs filed a response in opposition. *See* ECF 18. Defendants replied. *See* ECF 19. The Court has reviewed all relevant filings[1] and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). For the reasons below, Defendants' partial motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**.

I.     **BACKGROUND**

For the purpose of deciding the motion to dismiss, the Court accepts all well-pleaded facts in the amended complaint as true. *Mays v. Sprinkle*, 992 F.3d 295, 299 (4th Cir. 2021). Plaintiffs

---

[1] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page.

allege that on April 8, 2020, they left their West Franklin Street home to go to work and left their dog, Boy, in the care of a friend. ECF 14, at 4 ¶ 14. The friend let Boy out into the front yard of Plaintiffs' home, and "turned around to retrieve her shoes in order to follow [Boy] outside." *Id.* ¶ 16. Soon thereafter, Defendants Washington and Hawley arrived at a nearby residence to serve a warrant unrelated to Plaintiffs. *Id.* ¶ 17. Defendants Washington and Hawley encountered Boy and purportedly shot the dog. *Id.* at 4–5 ¶ 18. Plaintiffs allege that Boy was initially "shot while still in the front yard of [Plaintiffs'] home." *Id.* at 5 ¶ 21. However, Boy "hobbled away from [Defendants Washington and Hawley] and into the middle of the street where he was shot again." *Id.* Plaintiffs allege that Boy died "in the middle of West Franklin Street." *Id.* ¶ 22. Plaintiffs further allege that "Defendants Washington and Hawley shot and killed [Boy] without cause or provocation." *Id.* ¶ 23. Shortly after the shooting, Plaintiff Lane avers that upon arriving home "[a] Baltimore City Police Officer approached [him,] greeted him, apologized for the loss of his dog, and then explained that a Sherriff's Deputy had shot Boy." *Id.* ¶ 27. Plaintiff Lane avers that he arrived home to find Boy "still laying in the middle of the street with blood pooling around him." *Id.* at 6 ¶ 28.

Plaintiffs allege that Boy was "a friendly animal who had never hurt or threatened a human being." *Id.* ¶ 31. Plaintiffs further allege that "Boy was lawfully located on his owner's property and posed no threats to Defendants Washington or Hawley nor to anyone else when he was shot." *Id.* ¶ 32. Plaintiffs allege that the loss of their dog, they each felt "immediate and severe emotional pain and mental anguish." *Id.* at 7 ¶ 36. Plaintiffs "continue to suffer[] mental anguish, emotional pain and suffering, and financial loss" due to the loss of Boy. *Id.* ¶ 38.

Plaintiffs initially filed suit in the Circuit Court for Baltimore City on April 7, 2023, and raised state law claims as well as alleged violations of federal law. ECF 1 (notice of removal), at

2

1. Accordingly, Defendants removed the case to federal court on July 3, 2023, alleging that jurisdiction was proper under 28 U.S.C. § 1331. *Id.* at 2. On July 24, 2023, Plaintiffs filed an amended complaint alleging the following claims against all Defendants: unlawful seizure of property under Articles 24 and 26 of the Maryland Declaration of Rights (Count I), illegal entry onto Plaintiffs' property under the same Articles (Count II), conversion (Count III), trespass to property (Count IV), negligence (Count VI), and trespass to chattels (Count IX). ECF 14, at 9–20. Plaintiffs also sue Defendants Washington and Hawley for unlawful seizure of property under the Fourth Amendment (Count V), gross negligence (Count VII), and unlawful trespass in violation of the Fourth Amendment (Count VIII). *Id.* at 14–19. Defendants move to dismiss the Article 24 claim in Count I, the trespass claims (Counts II, IV, and VIII), all counts where both Sheriff's Deputies are sued in their official capacity, Count VI (negligence), and Count IX (trespass to chattels). *See* ECF 17.

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is appropriate where the complaint "fail[s] to state a claim upon which relief can be granted." In deciding a motion to dismiss, the Court "accept[s] all factual allegations as true and draw[s] all reasonable inferences in favor of the plaintiff [or petitioner]." *Washington v. Hous. Auth. of the City of Columbia*, 58 F.4th 170, 177 (4th Cir. 2023) (citing *Singer v. Reali*, 883 F.3d 425, 437 (4th Cir. 2018)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also* Fed. R. Civ. P. 8(a)(2) (noting that a complaint must contain "a short and plain statement of the claim showing that the [plaintiff] is entitled to relief"). "The complaint must offer 'more than labels and conclusions' or

'a formulaic recitation of the elements of a cause of action[.]'" *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 747 (4th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555). At the same time, a "complaint will not be dismissed as long as [it] provides sufficient detail about [the plaintiff's] claim to show that [the plaintiff] has a more-than-conceivable chance of success on the merits." *Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 396 (4th Cir. 2014).

### III. ANALYSIS

#### A. Trespass

Defendants move to dismiss all claims alleging trespass (Counts II, IV, and VIII) on the ground that Plaintiffs have not alleged any intrusion on Plaintiffs' property by Defendants Washington or Hawley. ECF 17-1, at 8. "A trespass is an intentional or negligent intrusion upon or to the possessory interest in property of another." *Ford v. Balt. City Sheriff's Off.*, 814 A.2d 127, 139 (Md. App. 2002). "In order to prevail on a cause of action for trespass, the plaintiff must establish: (1) an interference with a possessory interest in his property; (2) through the defendant[s'] physical act or force against that property; (3) which was executed without [Plaintiffs'] consent." *Royal Inv. Grp., LLC v. Wang*, 961 A.2d 665, 688 (Md. App. 2008) (citing *Ford,* 814 A.2d at 129). "Traditionally, courts held that . . . a defendant's act must cause an invasion of the plaintiff's property by some tangible matter." *Schuman v. Greenbelt Homes, Inc.*, 69 A.3d 512, 526 (Md. App. 2013) (quoting *John Larkin Inc. v. Marceau*, 959 A.2d 551, 554 (Vt. 2008)).

Defendants argue that Plaintiffs' amended complaint fails to allege facts to support the first and second elements of a trespass claim. ECF 17-1, at 9. Defendants argue that Plaintiffs fail to allege that "[Defendants Washington or Hawley] stepped onto [Plaintiffs'] property; that a bullet struck any part of the real property; or even that any part of a bullet was found on [Plaintiffs'] property." *Id.* Plaintiffs counter that "courts have routinely found trespass to occur where a person

causes a tangible object to enter the land in possession of another." ECF 18, at 8 (collecting cases). Plaintiffs confirm, however, that their trespass theory rests on the idea that "a trespass occurred when bullets fired intentionally by Defendants traveled over and onto Plaintiffs' property, effectively landing on the property by striking their pet dog." *Id.* at 9.

Defendants counter that the basis for the theory advanced by Plaintiffs—that a bullet traveling over their property is a trespass—was rejected in the 1946 decision of *United States v. Causby*, when the Supreme Court held that "[t]o recognize such private claims to the airspace would clog these highways, seriously interfere with their control and development in the public interest, and transfer into private ownership that to which only the public has a just claim." 328 U.S. 256, 261 (1946). As to the argument that a trespass occurred when bullets struck Plaintiffs' dog while he stood on Plaintiffs' property, Defendants contend that this would constitute a claim for conversion, not trespass. ECF 19, at 4.

"An action for trespass may lie '[w]hen a defendant interferes with a plaintiff's interest in the exclusive possession *of the land* by entering or causing something to *enter the land*.'" *Exxon Mobil Corp. v. Albright*, 71 A.3d 30, 94 (Md. 2013) (emphasis added) (citing *Rosenblatt v. Exxon Co., U.S.A.*, 642 A.2d 180, 189 (Md. 1994)), *on reconsideration in part on other grounds*, 71 A.3d 150 (Md. 2013). "Thus, recovery for trespass requires that the defendant must have entered or caused something harmful or noxious to *enter onto the plaintiff's land*." *Id.* (emphasis added). Plaintiffs have not alleged that Defendants Washington or Hawley set foot on their land or left any physical items on their land. Accordingly, since "[t]he premises of the plaintiffs were not invaded," they have failed to allege a trespass. *Toy v. Atl. Gulf & Pac. Co.*, 4 A.2d 757, 761 (Md. 1939).

5

Nearly all precedent cited by Plaintiffs in support of their trespass theory addresses non-analogous scenarios where bullets or pellets *fell* onto a plaintiff's land. *See, e.g.*, *Munro v. Williams*, 109 A. 129, 129 (Conn. 1920) ("Mischievous boys, having no intention of damaging respondent's property and being on adjoining property, shot air rifles upon respondent's property, *and the shots fell about the claimant*.") (emphasis added)); *Digirolamo v. Phila. Gun Club*, 89 A.2d 357, 358 (Pa. 1952) ("The shooting facilities and traps of the club are so arranged that portions of the shot fired at birds released during a meet, carry beyond the limits of the club property and *fall on plaintiff's land*, some 280 feet from the shooting stand.") (emphasis added)); *see also Whittaker v. Stangvick*, 111 N.W. 295, 297 (Minn. 1907) ("The mere fact that damage from falling shot or birds would be insignificant, as has been shown, has no logical bearing at all upon the question. The record, besides, conclusively shows substantial damage to the premises. At common law, trespass or case would have lain."). Defendants offer even more examples of cases where the shooting of a firearm may constitute a trespass when bullets, pellets, or fragments thereof fell on a plaintiff's land. ECF 19, at 3 (citing *La Loma Grande LLC v. United States*, No. CV-11-00476-TUC-RM, 2016 WL 8114197, at *12 (D. Ariz. July 27, 2016) and *Statler v. Catalano*, 521 N.E.2d 565, 569–70 (App. Ct. Ill. 1988)). However, there is no allegation that bullets landed on Plaintiffs' land. And neither side presents a modern analogous case where a court has recognized a trespass for the firing of a bullet that travelled *over* a plaintiff's land.[2]

Plaintiffs do provide a 1925 Montana state court case that arguably provides precedent for the claim that the bullets fired over property constitutes a trespass. *See Herrin v. Sutherland*, 241

---

[2] The Restatement (Second) of Torts avers that that "[a] trespass may be committed on, beneath, or above the surface of the earth with exceptions for flight by aircraft. § 159(1)." Restatement (2d) Torts § 159 ("Intrusions Upon, Beneath, and Above Surface of Earth"). However, relatively few cases in any jurisdiction cite to this provision, and apparently no court has cited to it in Maryland at either the state or federal level.

6

P. 328, 331 (Mont. 1925) ("It must be held that when the defendant, although standing upon the land of another, fired a shotgun over plaintiff's premises, dwelling and cattle, he interfered with 'the quiet, undisturbed, peaceful enjoyment' of the plaintiff, and thus committed a technical trespass at least."). *Herrin*, however, rested on the theory that "the plaintiff [is] the owner of the soil owned upward to an indefinite extent," *id.* at 332 (citation omitted), which is the precise premise the *Causby* court rendered obsolete some 20 years later. 328 U.S. at 260–61 ("It is ancient doctrine that at common law ownership of the land extended to the periphery of the universe—*Cujus est solum ejus est usque ad coelum*. But that doctrine has no place in the modern world.").[3]

There may exist a factual scenario where a near constant barrage of projectiles passing over a putative plaintiff's land rises to the level of a trespass. *See Shongo v. CSX Transp., Inc.*, Civ. No. RDB-22-2684, 2023 WL 4027121, at *5 (D. Md. June 14, 2023) (noting that despite the fact that an invasion of intangible matter like smoke, odor, light, and noise are not typically actionable under a trespass theory, the "blanketing" of a plaintiff's property by "toxic coal dust" may be sufficiently tangible to sustain a trespass claim). However, the facts as alleged by Plaintiffs—the one-time firing of a weapon that may have resulted in a projectile traveling over their land—fails to establish a trespass because, even accepting the claim as true, there is no allegation that the bullet touched Plaintiffs' land.

Plaintiffs' second argument—that the shooting of Boy as the dog walked on their property constitutes a trespass—also fails. As noted, "a trespass occurs when there is interference in the exclusive possession *of the land* of another." *Rosenblatt*, 642 A.2d at 189 (emphasis added). As such, the death of Plaintiffs' pet, though it is alleged to have begun on Plaintiffs' property, is not

---

[3] Defendants also note that *Herrin* was apparently overruled by subsequent cases before the Montana Supreme Court. ECF 19, at 3 n.3; *see also Pub. Lands Access Ass'n v. Bd. of Cnty. Comm'rs of Madison Cnty.*, 321 P.3d 38, 67 (Mont. 2014).

actionable as a trespass since the interference alleged is with the possession of personal property, not land. Indeed, Plaintiffs cite to numerous cases involving the death of a pet at the hands of law enforcement, yet none alleged a trespass claim based solely on the shooting of a pet while the pet, not the shooter, was on the plaintiff's property. *See, e.g.*, *Brooks v. Jenkins*, 104 A.3d 899, 902–03 (Md. App. 2014) (raising a trespass claim for officers' entry into the home of the plaintiff, not for the shooting death of plaintiff's pet); *Anne Arundel Cnty. v. Reeves*, 252 A.3d 921, 924 (Md. 2021) ("Mr. Reeves subsequently brought suit alleging, *inter alia*, that by fatally shooting [his dog,] Vern, Officer Price committed a trespass to Mr. Reeves' chattel, acted with gross negligence, and violated Mr. Reeves' rights under Articles 24 and 26 of the Maryland Declaration of Rights."); *Myers v. State of Maryland.*, Case No. C-07-cv-21-113 (Md. Cir. Ct. for Cecil Cnty. Sept. 30, 2022) (raising a trespass claim for the alleged entry onto the plaintiffs' private property, not solely because plaintiffs' dog was shot on plaintiffs' property).[4] These omissions are not simple oversights. Instead, the cases recognize the limitations of a trespass claim and its inapplicability to the facts alleged by Plaintiffs. Counts II, IV, and VIII are dismissed.

### B. Maryland Declaration of Rights

Defendants also move to dismiss any due process claim in Count I that is rooted in Article 24 of the Maryland Declaration of Rights. ECF 17-1, at 10–16. In relevant part, Plaintiffs appear to allege in Count I that Boy's killing "depriv[ed] them of their property, without due process of law, and in violation of Article 24." ECF 14, at 9 ¶ 56. Defendants argue that dismissal of any procedural due process claim is warranted "because is there is no process [Plaintiffs] could have been afforded before the incident, and state law provides an adequate postdeprivation remedy." ECF 17-1, at 11. Thus, Defendants argue that the *Parratt/Hudson* rule applies, which holds that

---

[4] The *Myers* decision is attached to Plaintiffs' opposition at ECF 18-2.

"a government official's random and unauthorized act, whether intentional or negligent, which causes the loss of private property is not a violation of procedural due process when the state provides a meaningful postdeprivation remedy." *See id.* at 12; *Yates v. Jamison*, 782 F.2d 1182, 1184 (4th Cir. 1986) (citing *Parratt v. Taylor*, 451 U.S. 527 (1981) and *Palmer v. Hudson*, 468 U.S. 517 (1984)). "The rationale is that because the wrongful act is not sanctioned by any established procedure, and because state law provides a means for the plaintiff to be made whole for his loss occasioned by the wrongful act, there has been no denial of procedural due process because the state action is not necessarily complete until the termination of the state's postdeprivation remedy." *Yates*, 782 F.2d at 1184.

Plaintiffs respond that their claim in Count I alleges "a due process deprivation of their family pet arising out of the use of excessive force" and does not raise a substantive or procedural due process claim. ECF 18, at 10. Plaintiffs claim that *Brooks v. Jenkins*, 104 A.3d 899 (Md. App. 2014), established that an excessive force claim can be properly raised pursuant to Article 24. Plaintiffs explicitly abandon any argument that Count I alleges a procedural or substantiative due process claim.[5] *See* ECF 18, at 8 ("Despite the Defendants' attempt to pigeon-hole Plaintiffs' claim into either substantive due process or procedural due process form, the form of Plaintiffs' claim is a due process deprivation of their family pet arising out of the use of excessive force.");

---

[5] It bears noting that Plaintiffs never used the words "excessive force" in the text of Count I, which states in pertinent part that Boy was "unlawfully seized" when he was "shot and killed . . . without legal justification or excuse, thereby injuring the Plaintiffs by depriving them of their property, without due process of law, and in violation of Article 24 and Article 26 of the Maryland Declaration of Rights." ECF 14, at 9 ¶ 56. Count I goes on to aver that the "shooting and killing [of] Boy constituted an unreasonable seizure of personal property by a law enforcement officer, in violation of the Maryland Constitution." *Id.* ¶ 57. Plaintiffs further allege that they did not "consent" to the "permanent depravation of their personal property" and that the permanent depravation of their property came "without legal justification." *Id.* ¶¶ 57–58. Thus, though Plaintiffs now clarify that Count I alleges only excessive force, it is understandable that Defendants believed this count included only substantive and procedural due process claims.

*id.* at 14 (arguing that *Slipper v. Town of Ridgeley* is persuasive and noting that "[a]s here, plaintiffs in *Slipper* pointed out to the trial court that the Article 24 claim arising out of the shooting of [their pet] is an excessive force claim, not a substantive or procedural due process claim" (citing Case No. C-05-cv-21-00018 (Md. Cir. Ct. for Caroline Cnty. Oct. 18, 2021)); *id.* at 15 ("[T]he claim brought by Plaintiffs is not a procedural due process claim where [the *Parratt/Hudson*] rule might be applicable."). Plaintiffs also note that Defendants raise the "exact same" argument as they did in a recent case in the Circuit Court for Cecil County and ask the Court to reject it for the same reasons given by that trial court. *Id.* at 11 (citing *Myers*, Case No. C-07-CV-21-000113).

Defendants counter by arguing that "Article 24 of the Maryland Constitution is not the proper vehicle under which to bring an excessive force claim" because "Article 24 protects the same rights as the Fourteenth Amendment." ECF 19, at 6 (quoting *Barnes v. Montgomery Cnty.*, 798 F. Supp. 2d 688, 700 (D. Md. 2011)). They contend that "Article 26 and the Fourth Amendment [are] the applicable constitutional provisions for allegations relating to unlawful seizures of property by law enforcement" and thus urge the Court to recognize that Plaintiffs' Article 24 claim is "'covered by' Article 26." *Id.* at 8. To the extent Plaintiffs draw the Court's attention to state cases that may appear to hold otherwise, Defendants discount those court opinions as "not persuasive" or note that they do not support, or were not called upon to fully address, Article 24's application to "excessive force" claims. *Id.*

Article 24 of the Maryland Declaration of Rights is entitled "Due Process" and holds "[t]hat no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or, in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land." Md. Const., Decl. of Rts., art. 24. "Although the Maryland Constitution does not contain an express guarantee of equal protection of

10

the laws, it is well established that Article 24 embodies the same equal protection concepts found in the Fourteenth Amendment to the U.S. Constitution." *Doe v. Dep't of Pub. Safety & Corr. Servs.*, 971 A.2d 975, 982 (Md. App. 2009) (quoting *Verzi v. Balt. Cnty.*, 635 A.2d 967, 969–70 (Md. 1994)). "Therefore, the analysis under Article 24 is, for all intents and purposes, duplicative of the analysis under the Fourteenth Amendment." *Hawkins v. Leggett*, 955 F. Supp. 2d 474, 496 (D. Md. 2013), *aff'd sub nom. In re Canarte*, 558 F. App'x 327 (4th Cir. 2014) (citation omitted). Accordingly, Plaintiffs' "excessive force" claim must be dismissed unless such a claim—at least against the factual allegations alleged in the amended complaint[6]—should be analyzed using the Fourteenth Amendment.

Plaintiffs argue there is ample support for permitting the Article 24 claim to move forward. Defendants counter that the proper vehicle for analyzing "excessive force" claims of the kind alleged by Plaintiffs is the Fourth Amendment, and thus the only state claim that should survive is the one alleging a violation of Article 26,[7] which is recognized as the state's Fourth Amendment analog. *See Stutzman v. Krenik*, 350 F. Supp. 3d 366, 377 (D. Md. 2018) ("Maryland courts

---

[6] Of course, there is no dispute that a due process challenge to excessive force would be appropriate in the context of pretrial detention. The Supreme Court has held that "when an aspect of pretrial detention that is not alleged to violate any express guarantee of the Constitution is challenged," the only cognizable Fourteenth Amendment due process claim is a challenge to "conditions or restrictions of pretrial detention that . . . amount to punishment of the detainee." *Bell v. Wolfish*, 441 U.S. 520, 534–36 (1979). As Judge Blake recognized, "Article 24 of the Maryland Declaration of Rights provides to pretrial detainees at least as much due process protection as the Fourteenth Amendment, . . . and Supreme Court interpretations of the Fourteenth Amendment function as authority for interpretation of Article 24." *Wallace v. Moyer*, Civ. No. CCB-17-3718, 2020 WL 1506343, at *6 (D. Md. Mar. 30, 2020) (citations and internal quotation marks omitted). Such a scenario is not present here.

[7] Article 26 of the Maryland Declaration of Rights provides that "all warrants, without oath or affirmation, . . . to seize any person or property, are grievous and oppressive; and all general warrants to search suspected places, or to apprehend suspected persons, without naming or describing the place, or the person in special, are illegal, and ought not to be granted." Md. Const., Decl. of Rts., art. 26.

11

construe Article 26 *in pari materia* with the Fourth Amendment, such that its comparable provisions are essentially equated to the Fourth Amendment's protections against unreasonable searches and seizures."). As both sides note in their respective briefing, there exists support for both sides of this issue.

On the one hand, Plaintiffs provide several Maryland state court decisions that have apparently left open the possibility that an "excessive force" claim can rest in Article 24 beyond the context of pretrial incarceration. Plaintiffs note that a few of these cases chronicle fact patterns similar to the one at bar, where a beloved pet is allegedly shot by officers, most notably *Brooks*. ECF 18, at 10–18. In *Brooks*, officers shot and wounded the plaintiffs' dog, Brandi. 104 A.3d at 902. The *Brooks* plaintiffs raised a number of claims including a claim for "[v]iolation of [Article] 24 (for shooting Brandi)" and one for "[v]iolation of [Article] 26 (for illegal entry into the home)." *Id.* at 903. The *Brooks* court observed in a footnote that while "an Article 26 claim could properly have been brought, [a] Article 24 permits a claim for excessive force too." *Id.* at 918 n.20 (citing *Espina v. Prince George's Cnty.*, 82 A.3d 1240, 1266 (Md. App. 2013), *aff'd sub nom. Espina v. Jackson*, 112 A.3d 442 (Md. 2015)). And it appears that this brief footnote provided ample support for the Circuit Court of Cecil County in *Myers* to permit an Article 24 excessive force claim to stand alongside an identical Article 26 one. See *Myers*, Case No. C-07-CV-21-000113, at *8 (ECF 18-3, at 8) ("Inasmuch as the Court of Special Appeals [in *Brooks*] assumed that an excessive force claim under Article 24 exists for the non-fatal shooting of a family dog by a police officer, this Court remains bound by that assumption.").[8]

---

[8] Plaintiffs, and the *Myers* court, also cite to *Anne Arundel Cnty. v. Reeves*, 252 A.3d 921 (Md. 2021). There, "the evidence sufficed to support the jury's finding that the Deputy . . . responded with excessive force." *Id.* at 937. "The jury found a violation of Mr. Reeves' due process rights under Article 24 by depriving him of his dog" but "awarded him $0 in damages for that constitutional claim." *Id.* at 927. Though this short passage recounting the history of the case

On the other hand, there are numerous opinions from judges of this Court holding otherwise. As Judge Chasanow observed, "[t]he Supreme Court [has] held . . . that 'all claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness" standard, rather than under a [Fourteenth Amendment] "substantive due process" approach.'" *Nicholson v. Balt. Police Dep't*, Civ. No. DKC 20-3146, 2023 WL 4549741, at *8 (D. Md. July 14, 2023) (alteration in original) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). Thus, excessive force claims for alleged wrongdoing in the course of an encounter with a free citizen "can only be brought under Article 26—the Fourth Amendment equivalent—and not Article 24." *Id.* (citing *Barnes,* 798 F. Supp. 2d at 700). This view is common among other judges of this Court. *See, e.g.*, *Tserkis v. Balt. Cnty.*, Civ. No. ELH-19-202, 2021 WL 3129325, at *11 (D. Md. July 23, 2021) (dismissing due process "excessive force" claims raised under Article 26); *B.N.S. by Stuart v. Brito*, Civ. No. ELH-17-2670, 2018 WL 5830565, at *9 (D. Md. Nov. 6, 2018) (dismissing due process claim under Article 24 alleging an unlawful seizure "without prejudice to plaintiff's right to file a claim under Article 26 of the Maryland Declaration of Rights"); *Truant v. Persuhn*, Civ. No. RDB-23-00579, 2023 WL 8600552, at *10 (D. Md. Dec. 12, 2023) ("Here, Plaintiff's Article 24 claim appears to allege excessive force and unreasonable search and seizure in violation of the Fourth Amendment. . . . As such, this Court will construe Plaintiff's Article 24 claim as though it were an Article 26 claim."); *Purnell v. Converse*, Civ. No. 21-3202-JMC, 2022 WL 17552552, at *10 n.10 (D. Md.

---

provides implicit recognition that an excessive force claim can be sustained under Article 24, the Maryland Supreme Court had no reason to provide additional analysis on the point and thus the case is not particularly helpful to finding an answer to the question at issue.

Dec. 9, 2022) ("Article 24 of the Maryland Constitution is not the proper vehicle under which to bring an excessive force claim arising out of an arrest." (citing *Barnes*, 798 F. Supp. 2d at 700)).

Of note is Judge Gesner's opinion in *Myers v. Town of Elkton*, Civ. No. BPG-22-803, 2023 WL 2242870, at *4 (D. Md. Feb. 24, 2023).[9] There, as here, the plaintiffs alleged that law enforcement officers used excessive force in shooting their dog, Bella, and raised a number of claims including a substantive due process claim based upon "an alleged right to be free from the deprivation of their personal property [their dog], which constitutes a seizure." *Id.* at *4; *see also* ECF 14, at 9 ¶ 57 (alleging the "permanent deprivation of Plaintiffs' property, in the form of Defendants Washington and Hawley shooting and killing Boy, constituted an unreasonable seizure of personal property by a law enforcement officer, in violation of the Maryland Constitution"). After the defendants moved to dismiss the due process claim, Judge Gesner explained:

> "All claims that law enforcement officers have used excessive force" in the course of a seizure "should be analyzed under the Fourth Amendment and its 'reasonableness' standard rather than under a 'substantive due process' approach." *Graham v. Connor*, 490 U.S. 386, 396 (1989). In fact, "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *County of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998) (quoting *Albright v. Oliver*, 510 U.S. 266, 273 (1994)).

*Myers*, 2023 WL 2242870, at *4 (alteration in original). "As a result," Judge Gesner continued, "any liability for [a defendant officer's] actions turns on an application of the reasonableness standard governing seizures under the Fourth Amendment, not substantive due process." *Id.*

---

[9] The *Myers* case cited by Plaintiffs from the Circuit Court for Cecil County is a different matter than the one of the same name before this Court. Sadly, both cases appear to involve the shooting of the same dog (Bella) on different dates and by different law enforcement officers. *See Myers*, Case No. C-07-CV-21-000113, at *3 (ECF 18-3, at 3) (shooting on April 10, 2018 by Sheriff's Deputies); *Myers*, 2023 WL 2242870, at *2 (shooting on April 5, 2019 by Elkton Police Officers).

Despite these apparent differences between courts in permitting the pleading of an excessive force claim under Article 24, one thing is clear: regardless of whether Plaintiffs' excessive force claims rest in Article 24 or 26, both articles will require the application of the Fourth Amendment, not the Due Process Clause. Thus, there can be no debate that Plaintiffs' Article 24 and Article 26 claims are essentially identical, a point Plaintiffs recognized when they were pled in the same count, and one they explicitly concede in their opposition to Defendants' motion. ECF 18, at 17 ("Claims of excessive force that result in unreasonable seizures can arise under either Article 24 [or] Article 26, and regardless of which Article is pled the standard is the same—the Fourth Amendment excessive force standard set by the Supreme Court[.]"). Thus, the Article 24 and Article 26 claims "stem from identical allegations, that are decided under identical legal standards, and for which identical relief is available." *Wultz v. Islamic Republic of Iran*, 755 F. Supp. 2d 1, 81 (D.D.C. 2010) (citing *McGee v. District of Columbia*, 646 F. Supp. 2d 115, 121–22 (D.D.C. 2009)). And "[a]s a matter of judicial economy, courts should dismiss a claim if it is duplicative of another claim in the same suit." *Id.* Therefore, dismissal of the Article 24 claim is proper on this basis alone.

Further, the reasoning articulated in the opinions of this Court carry the day. At least under the facts alleged here, Plaintiffs' excessive force claim "can only be brought under Article 26—the Fourth Amendment equivalent—and not Article 24." *Nicholson*, 2023 WL 4549741, at *8. Plaintiffs' Article 24 claim is dismissed.

C.  **Suits Against the Deputies in Their Official Capacities**

Defendants move to "dismiss all counts that name Deputy Washington and Deputy Hawley in their official capacities because (1) they are not 'persons' in that capacity under 42 U.S.C. § 1983, and (2) Maryland law does not recognize official capacity claims." ECF 17-1, at 16. As to

15

the claims alleging "official capacity" liability under 42 U.S.C. § 1983, Plaintiffs must allege the violation of a right secured by the Constitution, and must also allege "that the alleged deprivation was committed by a *person* acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (emphasis added).  In *Will v. Michigan Department of State Police*, the Supreme Court explained that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983."[10] 491 U.S. 58, 71 (1989).  There is no dispute that Defendants Washington and Hawley were acting as agents of the State of Maryland when they allegedly shot and killed Boy.  *See Rossignol v. Voorhaar*, 321 F. Supp. 2d 642, 651 (D. Md. 2004) ("Maryland's highest court has previously engaged in a detailed analysis of Maryland's Constitution and Code to conclude that a sheriff and his deputies are state employees." (citing *Rucker v. Harford Cnty.*, 558 A.2d 399 (Md. 1989))). Plaintiffs also acknowledge the limitations on official capacity liability under 42 U.S.C. § 1983 and concede that "[t]he injuries described and the relief requested by Plaintiffs in Counts V and VIII are based on individual capacity claims against Defendants Washington and Hawley." ECF 18, at 19.  Accordingly, any 42 U.S.C. § 1983 claims against Defendants Washington and Hawley in their official capacities—to the extent any exist—are dismissed.

As to the state claims against Defendants Washington and Hawley, Defendants correctly note that "Maryland law does 'not follow the federally recognized distinction between official and

---

[10] As Defendants note, under the doctrine of *Ex parte Young*, 209 U.S. 123 (1908), such official capacity suits may be permitted when a plaintiff seeks "prospective injunctive relief to prevent a continuing violation of federal law." ECF 17-1, at 17 (quoting *Green v. Mansour*, 474 U.S. 64, 68 (1985)). "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997)).  No claim here alleges an ongoing violation of law; *Ex parte Young* is inapplicable.  *See* ECF 18, at 19 (conceding that "Plaintiffs have not sought any form of injunctive relief against Defendants . . . rendering Defendants discussion of *Ex [p]arte Young* inapposite.").

individual capacity actions' for tort actions against State officials." ECF 17-1, at 18 (quoting *Okwa v. Harper*, 757 A.2d 118, 140 (Md. 2000)).[11]  Plaintiffs agree, and contend that "[p]roperly understood, the state law claims alleged by Plaintiffs . . . are not 'official capacity claims' as such claims do not exist and such a distinction is inconsequential under Maryland law." ECF 18, at 19. Defendants counter that this assertion is belied by the caption of Plaintiffs' amended complaint, which appears to raise all claims against both Deputies in their *individual* and *official* capacities. ECF 19, at 9.  To quell any confusion, and because "[s]tate law does not allow [the] bifurcation [of individual and official capacity claims]," the Court will dismiss any state claims against Defendants Washington and Hawley in their official capacities. *See Ritchie v. Donnelly*, 597 A.2d 432, 447 (Md. 1991).

> D. **Negligence**

Defendants also move to dismiss the negligence claim against Deputies Washington and Hawley (Count VI) on the ground that both have statutory immunity under the Maryland Tort Claims Act ("MTCA").  ECF 17-1, at 19 (citing Md. Code Ann., State Gov't §§ 12-101 to 12-110).  Defendants contend that because Plaintiffs "repeatedly allege that Deputy Washington and Deputy Hawley acted within the scope of their employment," they cannot be sued for negligently performing their employment-related duties. *Id.* at 20 (citing *Williams v. Morgan State Univ.*, 300 A.3d 54, 59 (Md. 2023)); *see Williams*, 300 A.3d at 59 ("The other central component of the MTCA, in addition to its waiver of the State's sovereign immunity for tortious acts or omissions by State personnel, is a *corresponding immunity* from suit and from liability in tort for State personnel." (emphasis in original)).  Defendants are correct on this point.

---

[11] Defendants misattribute this quote to *Higginbotham v. Pub. Serv. Comm'n of Md.*, 985 A.2d 1183 (Md. 2009).

17

"[A] party can bring a viable tort action *against the State* when the tort was committed by a State employee acting within the scope of his or her employment and without malice or gross negligence." *Ford*, 814 A.2d at 134 (emphasis added). "If, however, the State employee has acted with malice or gross negligence . . . , the State is immune from suit and the injured party may only bring a viable tort claim against the State employee." *Id.* at 120–21 (citations omitted). Plaintiffs, as they must, appear to concede this point. ECF 18, at 20. They note, however, that immunity for state employees does not apply to allegations of *gross* negligence, which they have pled in the alternative. *Id.* (citing Md. Code Ann., Cts. & Jud. Proc. § 5-522); *see also* ECF 14, at 17 (Count VII, Gross Negligence). But simply including a claim for gross negligence does not change the fact that the claim against Deputies Washington and Hawley alleging the commission of a negligent act within the scope of their employment is clearly out of bounds. *Ford*, 814 A.2d at 134. Plaintiffs' negligence claim (Count VI) is dismissed as to Defendants Washington and Hawley.

### E. Trespass to Chattels

Defendants move to dismiss Plaintiffs' trespass to chattels claim (Count IX) because Plaintiffs "also allege a count of conversion (Count III) and are not permitted to pursue both simultaneously." ECF 17-1, at 20. Plaintiffs respond by arguing that it would be unfair to ask them to choose between "theories of recovery at the motion to dismiss stage of litigation or . . . otherwise require [them] to make some sort of election of remedies at the pleadings stage of the litigation." ECF 18, at 22–23.

All parties appear to agree that "[a]lthough different measures of damages are applicable in trespass [to chattels] and conversion, these two forms of action provide alternative remedies for the same wrong." *Staub v. Staub*, 376 A.2d 1129, 1133 (Md. App. 1977). However, Defendants

provide no support for their claim that simply because Plaintiffs may "recover for trespass or for conversion, but not for both," *id.*, they are forbidden from pleading both claims. Indeed, there are too many examples to count where courts have permitted both claims to move forward simultaneously, at least at this early stage. *See*, *e.g.*, *United States v. Arora,* 860 F. Supp. 1091, 1096 (D. Md. 1994) ("[T]he United States filed this civil suit against Dr. Arora, claiming compensatory and punitive damages for what it alleged was his conversion of or trespass against its property."), *aff'd*, 56 F.3d 62 (4th Cir. 1995); *Agropex Int'l Inc. v. Access World (USA) LLC*, Civ. No. 19-1232-JMC, 2019 WL 3323156, at *2 (D. Md. July 23, 2019) (noting that plaintiff alleged separate claims for "trespass to chattels" and "conversion"); *Bogart v. Chapell*, 396 F.3d 548, 557 n.7 (4th Cir. 2005) (noting that plaintiff "possessed viable state causes of action against [a state defendant] for negligence and conversion/trespass to chattels" after state euthanized plaintiffs dogs and cats). Indeed, Plaintiffs note that the trial court in *Staub*, the very case on which Defendants principally rely to make their argument, permitted both a trespass to chattels and a conversion claim to survive through trial. ECF 18, at 23 (citing *Staub*, 376 A.2d 1129, 1133). Defendants' motion is denied as to Count IX.

## IV. CONCLUSION

For the foregoing reasons, Defendants' partial motion to dismiss, ECF 17, is **GRANTED IN PART** and **DENIED IN PART**. Counts II, IV, VI, and VIII are **DISMISSED**, as is the Article 24 claim in Count I. All claims raised against Deputy Washington and Deputy Hawley in their official capacity are also **DISMISSED**. The motion is **DENIED** as to Count IX.

A separate implementing order follows.

Dated: July 1, 2024                                                                /s/
                                                                    Brendan A. Hurson
                                                                    United States District Judge